**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

*FILED*

*NOV 15 2004*

*MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT*

04 DEC 14 PM 1: 39

SHAWN LANDA and
VINCENT SANTILLO,

      Plaintiffs,

    v.

SECOND CHANCE BODY ARMOR, INC.;
TOYOBO CO., LTD.; and
TOYOBO AMERICA, INC.

      Defendants.

*WH* Case No.:  04 C 7339

Judge John W. Darrah

Magistrate Judge Levin

1:04CV0839

**David W. McKeague
U.S. District Judge**

**DOCKETED**
NOV 16 2004

**NOTICE OF FILING**

Please take notice that Toyobo America, Inc  submitted for filing with the above referenced Court the Affidavit of Konrad Cailteux in Support of Toyobo America's Motion to Transfer Pursuant to 28 U.S.C. 1404(a).

Joshua D. Lee
SCHIFF HARDIN LLP
Counsel for Defendant,
    TOYOBO AMERICA, INC.
6600 Sears Tower
Chicago, Illinois  60606
(312) 258-5500



## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that, on November 15, 2004 he caused to be served true and correct copy of this Notice of Filing and Affidavit via hand delivery to:

Daniel A. Edelman, Esq.
Jennifer S. Cichowski
Edelman, Combs, Latturner &
Goodwin, LLC
120 S. LaSalle Street
18th Floor
Chicago, Illinois  60603

Matthew J. Gehringer, Esq.
Perkins Coie LLP
131 South Dearborn Street
Suite 1700
Chicago, IL 60603-5559

and via federal express to:

P. Rivka Schochet, Esq.
Miller, Canfield, Paddock and Stone, P.L.C.
150 West Jefferson
Suite 2500
Detroit, Michigan  48226

Joshua D. Lee

CH1\ 4199267.1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SHAWN LANDA and<br>VINCENT SANTILLO,<br><br>      Plaintiffs,<br><br>      v.<br><br>SECOND CHANCE BODY ARMOR, INC.;<br>TOYOBO CO., LTD.; and<br>TOYOBO AMERICA, INC.<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case *04 c 7339* |

FILED

NOV 1 2004

DOCKETED

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

NOV 16 2004

DOCKETED

NOV 1 6 2004

### AFFIDAVIT OF KONRAD L. CAILTEUX IN SUPPORT OF TOYOBO COMPANIES' MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(A)

I, Konrad L. Cailteux, being first duly sworn, state as follows:

1.    My name is Konrad L. Cailteux. I am a member of the law firm of Weil, Gotshal & Manges LLP, one of the attorneys for defendants Toyobo Co., Ltd. (sometimes "Toyobo Japan") and Toyobo America, Inc. (together, the "Toyobo Companies"), in the above-captioned action. Unless otherwise stated, I make this affidavit based upon personal knowledge.

2.    The present action is only one of a number of cases filed across the country against the Toyobo Companies and Second Chance Body Armor, Inc. ("Second Chance") in which the plaintiffs attempt to assert claims against both the Toyobo Companies and Second Chance arising from Second Chance's manufacture and sale of Zylon-containing bullet resistant vests.

3.    In the present action – just like the other cases filed across the country – it is alleged that Defendant Toyobo Japan manufactured Zylon fiber, which is sold to third parties who weave the Zylon into ballistic plies, that are then sold to Second Chance, which uses the plies



as one of the many components in its bullet resistant vests. As discussed further below, in one of the state court actions, plaintiffs emphasized the applications of Michigan law to plaintiffs' putative warranty claims allegedly arising from the foregoing conduct.

4.      In an attempt to establish the liability of the Toyobo Companies for Second Chance's vests, Plaintiffs in this action have alleged that the Toyobo Companies and Second Chance were "partners" or "co-manufacturers." Plaintiffs have characterized the respective roles of the Toyobo Companies and Second Chance with respect to the Zylon-containing body armor manufactured and sold by Second Chance in the same fashion in the other litigations filed against Second Chance and the Toyobo Companies across the country. As an example of these types of allegations, attached hereto as Exhibit A is a copy of Plaintiffs' Opposition to Toyobo Co. Ltd.'s Dilatory, Declinatory and Declaratory Exceptions in Johnson, et. al. v. Toyobo Co. Ltd., et. al., NO. 2004-003268, in the 14th Judicial District for the Parish of Calcasieu, State of Louisiana. In these papers, plaintiffs allege, among other things, that "Toyobo was a partner with . .. Second Chance throughout the entire development, marketing, and period of sale of Zylon containing vests to law enforcement in Louisiana, and Plaintiff alleged as much in his petition." (Exhibit "A" at p. 7-8.) Plaintiffs in Johnson also argued that there exists a "community of interests" between Toyobo and Second Chance because each is involved "in the sale, use, manufacture, advertising, insurance or distribution of Zylon or Zylon containing products." (Id. at p. 6.)

5.      On October 17, 2004 (the "Petition Date"), co-defendant Second Chance filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court for the United States District Court for the Western District of Michigan. Second Chance continues to operate its business and manage its affairs as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

A statutory committee of unsecured creditors has been appointed in the case, and a meeting of creditors is scheduled for November 18, 2004.

6.    The Toyobo Companies understand that a major reason for Second Chance's decision to file a Chapter 11 petition was the cost and difficulty of managing this and the other actions pending against it. A copy of an October 17, 2003 press release issued by Second Chance explaining its decision to file for Chapter 11 is attached hereto as Exhibit "B".

7.    On October 20, 2004, the Bankruptcy Court authorized Second Chance to continue its warranty program, allowing certain purchasers of certain models of bullet resistant vests to upgrade them, or receive credits or discounts on future vest purchases. In seeking such relief from the Bankruptcy Court, Second Chance represented that it "believes that [its] Chapter 11 case will provide [it] with the most efficient and cost-effective means of managing the Zylon litigation and Zylon claims... ." A copy of Debtor's Motion To Authorize The Continuation Of Its Warranty Program And To Honor Prepetition Warranty Obligations To Customers, containing this statement at ¶ 15, is attached hereto as Exhibit "C."

8.    Second Chance has stated that the instant action — like the other actions pending across the country in which Second Chance and the Toyobo Companies are named as Defendants — is integrally related to the Second Chance bankruptcy case. More specifically, in their objection to a motion to lift the automatic stay filed by a plaintiff in one of the personal injury actions against Second Chance and the Toyobo Companies, Second Chance, referencing this action and the other lawsuits against Second Chance and the Toyobo Companies pending around the country, argued that "**all** of the lawsuits contain important common issues of law and fact. Those issues relate to whether Toyobo manufactured a defective ballistic fiber, known as Zylon, and whether negligence and warranty theories of liability apply to Second Chance and Toyobo." A copy of Second Chance's Objection to Relief from Stay, containing this statement at ¶ 7, is attached hereto as Exhibit "D." Second Chance also stated in its objection that "any

judicial resolution of Toyobo's indemnity and contribution claims against Second Chance in the [personal injury] lawsuit could have collateral estoppel or other impact on Debtor's ongoing litigation with Toyobo" elsewhere in the country (Exhibit D at ¶ 7).

9.      Prior to Second Chance's filing of a Chapter 11 petition, Discovery had been ongoing in many of the cases naming the Toyobo Companies and Second Chance. Pursuant to an agreement with Allan Kanner – lead counsel in a number of the actions filed against Second Chance and the Toyobo Companies – discovery was to be used in all of the cases in which he is counsel. The Toyobo Companies had tentative agreements with plaintiffs' counsel in some of the other cases to coordinate such discovery as well. The discovery conducted included discovery from Second Chance. As described below, that discovery had not been completed prior to Second Chance's filing of its Chapter 11 petition.

10.      In fact, at the time of Second Chance's filing, The Toyobo Companies had only just begun their questioning in the depositions of past and present employees of Second Chance. The Toyobo Companies have thus not been able to conduct or complete its discovery of Second Chance in this case or the other cases around the country because of Second Chance's bankruptcy filing.

11.      The Toyobo Companies need the following discovery, at a minimum, from Second Chance in order to adequately prepare their defenses in these cases:

     a.     From Ed Bachner, Second Chance's Secretary and Group Vice President of Technology and Product Assurance, who upon information and belief, resides in or around Central Lake, Michigan, the Toyobo Companies need to complete discovery of, among other things,

- Mr. Bachner's knowledge of used vest testing from July 2001 through February 2002, including methodologies, results, impressions, and contemporaneous notes.

- Mr. Bachner's knowledge of Executive Committee Meetings in which used vest testing results and other relevant issues were discussed, including his contemporaneous notes.

- Mr. Bachner's knowledge of testing of fabric in 2001 through 2002.

- Mr. Bachner's communications with the Toyobo Companies from July 2001 through October 2003.

- Mr. Bachner's knowledge of and impressions of Second Chance's used vest test data from October 2002 through August 2003.

- Mr. Bachner's knowledge of Second Chance's design of Zylon-containing vests from 1998 through 2003.

- Mr. Bachner's knowledge of industry standards regarding the testing of fiber before marketing vests.

- Mr. Bachner's discussions with weavers who wove ballistic fabrics for Second Chance.

b.   From Richard Davis, Chairman of the Board, who upon information and belief, resides in or around Central Lake, Michigan, the Toyobo Companies need to complete discovery of, among other things:

- Mr. Davis's knowledge regarding Second Chance's proposed corrective actions for its Zylon-containing vests and Second Chance's ability to pay for those proposed corrective actions.

- Mr. Davis's knowledge of Executive Committee meetings in which used vest testing results and other relevant issues were discussed, including any contemporaneous notes.

- Mr. Davis's discussions with Second Chance's sales force regarding the durability of Zylon-containing vests.

- Mr. Davis's knowledge of and opinion of Dr. Westrick's allegations.

- Mr. Davis's knowledge of and opinion of the 2002 through 2003 used vest testing results.

- Mr. Davis's knowledge of and opinion of the Toyobo Companies' October 2003 release of data.

- Mr. Davis's communications with the Toyobo Companies in 2002 through 2003.

c.   From Paul Banducci, President and CEO, who upon information and belief resides in or around Central Lake, Michigan, the Toyobo Companies need to complete discovery of, among other things:

- 5 -

- Mr. Banducci's knowledge of and impressions of an alleged "partnership" between the Toyobo Companies and Second Chance.

- Mr. Banducci's knowledge regarding Second Chance's proposed corrective actions for its Zylon-containing vests and Second Chance's ability to pay for those proposed corrective actions.

- Mr. Banducci's communications with the Toyobo Companies in 2002 through 2003.

- Mr. Banducci's knowledge of Executive Committee Meetings in which used vest testing results and other relevant issues were discussed, including any contemporaneous notes.

- Mr. Banducci's admission that Second Chance was responsible for determining whether Zylon fiber was suitable for ballistic applications.

d.    From Karen McCraney, Senior Vice President, who upon information and belief, resides in or around Central Lake, Michigan, the Toyobo Companies need to complete discovery of, among other things:

- Ms. McCraney's knowledge of Executive Committee Meetings in which used vest testing results or other relevant issues were discussed, including her contemporaneous notes that have been heavily redacted.

- The Toyobo Companies have a pending request on the record for all of the notes from the Executive Committee Meetings, including those positions redacted by Second Change.  Once all of the documents requested are received, the Toyobo Companies may need to question her on the issues discussed therein.

e.    From Larry McCraney, Senior Vice President, who upon information and belief, resides in or around Central Lake, Michigan, the Toyobo Companies need to complete discovery of, among other things:

- Mr. McCraney's knowledge of Executive Committee Meetings in which used vest testing results or other relevant issues were discussed, including contemporaneous notes of the meetings that have been heavily redacted.

- The Toyobo Companies have a pending request for all of the notes from the Executive Committee Meetings of Second Chance including those portions redacted by Second Chance.  Once all of the documents requested are received, the Toyobo Companies may need to question him on the issues discussed therein.

- 6 -

f.  From Mark Pickett, former Group Vice President of Global Sales and Marketing, the Toyobo Companies need to complete discovery of, among other things:

- Mr. Pickett's knowledge of various rebate issues associated with the purchase of Zylon fiber, including the impact of those rebates on Second Chance's ability to take corrective action.

- Mr. Pickett's knowledge of communications to Second Chance's sales force about Zylon-containing vests.

g.  From Dr. Aaron Westrick, former Director of Research, Composite Development and Training, who upon information and belief, resides in or around Central Lake, Michigan, the Toyobo Companies need to complete discovery of, among other things:

- Dr. Westrick's communications and conversations with Mr. Bachner, Mr. Davis, Mr. Banducci or others at Second Chance about used vest testing.

- Dr. Westrick's communications with the Toyobo Companies.

- Dr. Westrick's knowledge of and impressions of an alleged "partnership" between the Toyobo Companies and Second Chance.

- Dr. Westrick's allegations of a cover-up of the Zylon durability issue at Second Chance.

- Dr. Westrick also has not produced three (3) log books requested by the parties at his deposition that purportedly contain his contemporaneous notes of conversations and communications regarding the durability of Zylon. Dr. Westrick's counsel has represented that the log books have been turned over to Second Chance to allow it to assert any applicable privileges. To date, the log books have not been provided to the Toyobo Companies.

12.  Based on discovery taken so far, the Toyobo Companies believe the testimony of the above individuals at trial will be highly relevant to the Toyobo Companies' defenses in this case and the other cases filed around the country. If the trial of this case proceeds in this Court, these witnesses will be beyond the Court's subpoena power, and therefore would be unavailable to testify in person at trial.

13.  The Toyobo Companies have not begun to depose Second Chance's Fed. R. Civ. P. 30(b)(6) corporate witnesses regarding, among other things, product design,

-7-

product manufacturing, product marketing, product testing, Second Chance's document retention policies, Second Chance's discovery responses, or its performance pack inserts under its warranty program.

14. The Toyobo Companies have not begun to depose dealers of Second Chance vests, whether domestic or foreign, regarding, among other things, (i) the price at which Zylon-containing vests were purchased from Second Chance and the price at which they were ultimately sold to end users and (ii) communications from and with Second Chance regarding the durability of Zylon.

15. The Toyobo Companies have not begun to depose James Young, Vice President, General Counsel, and member of Second Chance's Board of Directors who (upon information and belief) also resides in or around Central Lake, Michigan regarding, among other things, (i) various warranty issues including the drafting of the warranty and any changes to the warranty language, (ii) his analysis of Toyobo Japan's express and implied warranty disclaimers, (iii) his role as a business person at the Executive Committee meetings, including his knowledge of Executive Committee meetings in which used vest testing results or other relevant issues were discussed, and (iv) his response to Dr. Westrick's allegations about the fate of Mr. Davis's July 2002 letter to the Board.

16. The Toyobo Companies have not begun to depose Armin Wagner, a Second Chance dealer in Germany regarding, among other things, (i) his knowledge of and impressions of the Mehler/DSM pull-out from the German contract tender, and (ii) his communications with Second Chance and the Toyobo Companies regarding the durability of Zylon.

17. The Toyobo Companies have not begun to depose Second Chance's weavers, including, but not limited to, Barrady, Hexcel and Lincoln, about the types of weaves

- 8 -

employed by Second Chance, who selected the weaves and communications among and between Second Chance, the Toyobo Companies and the weavers.

18.     The Toyobo Companies have not begun to depose Second Chance's expert witnesses, nor have such experts even been identified.  Expert discovery, however, is likely to be very similar in the cases in which the Toyobo Companies and Second Chance have been named as co-defendants.

19.     Document production by Second Chance has yet to be completed, and disputes between the Toyobo Companies and Second Chance remain about critical documents that the Toyobo Companies believe Second Chance has yet to produce as well as documents with significant redactions made by Second Chance that the Toyobo Companies do not believe are appropriate.  Upon information and belief, these documents are located in or around Central Lake Michigan.  Specifically, Toyobo Japan's First Set of Document Requests to Second Chance, served on October 4, 2004, in connection with the Lemmings action, remains outstanding, and Second Chance has yet to supplement its deficient responses to Toyobo's document requests and interrogatories in the NAPO, Bridgeton, Lemmings, Limbacher, and Zeppetella actions.  In addition, Second Chance has not yet produced the following documents requested on the record during depositions:

- All ISO manuals used at any time in the manufacturing process of vests containing Zylon fiber.

- Copies of any executive committee meeting notes taken by Ed Bachner, Larry McCraney, or other committee members, in which the purchase of Simula is discussed or mentioned.

- Complete and un-redacted copies of all notes of all executive committee meetings.

- The PowerPoint presentation made by Second Chance to the National Association of Attorneys General in September 2004.

- Test results of Zylon-containing fabric conducted by H.P. White Laboratory, Inc. and U.S. Testing Laboratory done to ensure that incoming fabric complied with Second Chance's Critical Material Specifications.

- Copies of all "nonconforming reports" or "N.C.R.'s" generated by Second Chance employees during the manufacturing processes of Zylon-containing vests.

- A blank copy of each type of warranty card provided to consumers of Second Chance vests.

- Notes taken by Mr. Bachner during the deposition of Dr. Aaron Westrick, conducted on September 17-18 and September 24, 2004.

- Notes taken by Mr. Bachner at any Second Chance Executive Board meetings during which Dr. Westrick or his deposition testimony was discussed, or any official or unofficial minutes of these meetings.

- The Second Chance personnel file of Dr. Aaron Westrick.

- Any development record(s) pertaining to the Ultima. Ultimax, Bi-Flex, or Tri-Flex vests.

- Other documents requested on the record during previous depositions of Second Chance witnesses.

20.    Mr. Kanner, in his cases against Second Chance and the Toyobo companies, has urged the application of Michigan law to certain of plaintiffs' punitive claims in these actions.  Attached as Exhibit E is plaintiffs' Reply in Further Support of Class Certification in <u>Lemmings, et al.</u> v. <u>Second Chance Body Armor, Inc., et al.</u>, Case No. CJ-2004-62, in the District Court in and for the county of Mayes County, State of Oklahoma, wherein Mr. Kanner makes such this representation at p. 13-14.

21.    On January 27, 2004, Mr. Kanner filed an amended complaint class action in <u>LaBrosse</u> v. <u>Toyobo Company, Ltd., et. al.</u> Case No. 04-402021CZ, in Wayne County Circuit Court, State of Michigan.  On March 25, 2004, Mr. Kanner filed a motion seeking certification of a national class of plaintiffs.  On July 12, 2004, Mr. Kanner filed a supplement to his motion which, *inter alia*, changed his motion to certify only a Michigan class of plaintiffs.

22.    On March 23, 2004, Mr. Kanner filed an amended complaint in Lemmings, et al. v. Second Chance Body Armor, Inc., et. al., Case N. CJ-2004-62, in the District Court in and for the County of Mayes County, State of Oklahoma.  On May 19, 2004, Mr. Kanner filed a motion for certification of an Oklahoma motion for certification of an Oklahoma class of plaintiffs only.  On August 6, 2004, Mr. Kanner filed a supplement to his motion seeking, *inter alia*, to change his motion to certify a national class of plaintiffs instead of an Oklahoma only class.


_____
Konrad L. Cailteux

Subscribed and sworn to before me
this 11th day of November, 2004.

_____
Notary Public
My Commission expires: _____

1378474.1

THEODORE E. TSEKERIDES
Notary Public, State of New York
No. 02TS5035371
Qualified in Nassau County
Certificate Filed in Nassau County
Commission Expires October 31, 2006